S. Peter Serrano
United States Attorney
Eastern District of Washington
Michael J. Ellis
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:25-CR-00072-RLP |
| vs. | Government's Trial Brief |
| MARTIN RAFAEL DIAZ-AMEZCUA, | |
| Defendant. | |

Plaintiff, United States of America, by and through S. Peter Serrano, United States Attorney for the Eastern District of Washington, and Michael J. Ellis, Assistant United States Attorney, submits the following trial brief.

## I. STATUS OF THE CASE

A. A jury trial is scheduled to commence at 8:30 a.m., on November 3, 2025.

B. Estimated time for the Government's case in chief for trial is one day, excluding jury selection.

C. The Defendant is detained pending trial. *See* ECF No. 41.

D. The Indictment, *see* ECF No. 16, provides as follows:

Government's Trial Brief – 1

On or about April 29, 2025, in the Eastern District of Washington, the Defendant, MARTIN RAFAEL DIAZ-AMEZCUA, did forcibly assault, resist, oppose, impede, intimidate, and interfere with W.S., while W.S. was employed as a Border Patrol Agent with United States Customs and Border Protection, and while W.S. was engaged in and on account of the performance of W.S.'s official duties, and in doing so inflicted bodily injury upon W.S., all in violation of 18 U.S.C. § 111(a)(1), (b).

## II.     SUMMARY OF GOVERNMENT'S EVIDENCE

On April 29, 2025, agents with the Border Patrol and Homeland Security Investigations were conducting surveillance for the Defendant, who was subject to arrest in relation to an order of removal. An agent observed the Defendant and surveilled the Defendant back to the Defendant's residence. The Defendant attempted to run inside his residence by entering through a gate leading to the backyard. The agent pursued and caught the Defendant at the gate. As the agent held the Defendant at the gate, the Defendant struck the agent in the eye with the Defendant's elbow, causing a black eye. Other agents arrived and, after a struggle, the Defendant was taken into custody.

The Defendant was separately arrested on December 19, 2018, by the Border Patrol in relation to the same order of removal. Agents learned that the Defendant had a scheduled court appearance before the Spokane County, Washington, Superior Court[1] on December 19, 2018. The Defendant was identified by an agent as the Defendant left the courthouse. The agent called out "Martin Diaz" to the Defendant.

---

[1] The Government anticipates not asking the agent to specify exactly why the Defendant was at the Spokane County Superior Court.

Government's Trial Brief – 2

The Defendant turned around and stated "oh shit." The agent identified himself as a Border Patrol agent and informed the Defendant that he was under arrest. The Defendant turned and ran away from the agent, running into a nearby grassy area in front of the courthouse. The agent pursued and caught up to the Defendant. The Defendant tensed up and resisted the agent's attempts to place the Defendant in handcuffs. The Defendant continued to resist despite commands from agents to stop resisting. The Defendant's spouse eventually yelled at the Defendant "don't fight them" and the Defendant stated "okay, okay." The Defendant was then placed in handcuffs.

The Defendant was transported to the Border Patrol facility and placed in a holding cell. The Defendant yelled at agents while inside the holding cell. At one point when agents needed the Defendant to sign processing paperwork, the Defendant drove his shoulder into the holding cell door making it swing towards the agent, who was able to move out of the way without being struck.

Later, agents re-entered the holding cell to transport the Defendant to the Spokane County Jail. The Defendant informed agents that he was not going, moved away from the door, and clenched his fists. The Defendant refused multiple demands and again informed agents that he was not going. Eventually the Defendant allowed agents to place him in restraints.

### III.  ELEMENTS

The elements of assault on a federal officer are:

Government's Trial Brief – 3

First, on or about April 29, 2025, in the Eastern District of Washington, the defendant forcibly assaulted Walter Sketch;

Second, the defendant did so while Walter Sketch was engaged in, or on account of, his official duties; and

Third, the defendant inflicted bodily injury.

*See* Ninth Circuit Model Criminal Jury Instruction 8.12.

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.

**A. A Border Patrol Agent's status as a federal officer**

While the jury must determine that Walter Sketch was a Border Patrol Agent and engaged in his official duties on April 29, 2025, the Court determines as a matter of law that Border Patrol Agents, as a class, qualify as federal officers. *Cf. United States v. Janis*, 810 F.3d 595, 598 (8th Cir. 2016) (noting, in the context of tribal law enforcement, that "the court should decide as a matter of law whether the officers of the relevant tribal law enforcement department, as a class, qualify as federal officers").

As a matter of law, a Border Patrol Agent's status as a federal officer is a legal matter for the Court, not a factual question for the jury. *Cf. United States v. Sohappy*, 770 F.2d 816, 822 n.6 (9th Cir. 1985) ("The issue of what constitutes Indian country is

Government's Trial Brief – 4

properly a matter for the judge and not the jury."). The jurisdictional fact questions for the jury are whether Walter Sketch was a Border Patrol Agent and engaged in his official duties on April 29, 2025. *Cf. United States v. Gipe*, 672 F.2d 777, 779 (9th Cir. 1982) (noting that "the court may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact"); *United States v. Morgan*, 748 F.3d 1024, 1034 (10th Cir. 2014) (finding that the district court "correctly instructed the jury to determine whether the Defendants *used* an instrumentality of interstate commerce . . . in committing the crime") (emphasis in original).

Border Patrol Agents "serve as the law enforcement office of U.S. Customs and Border Protection with primary responsibility for" enforcing the immigration laws of the United States. *See* 6 U.S.C. § 211(e)(3); *see also United States v. Rivera-Alonzo*, 584 F.3d 829 (9th Cir. 2009) (affirming § 111 conviction arising from an assault on a Border Patrol Agent). The Government accordingly intends to request that – in the elements instruction – the Court instruct the jury that "A Border Patrol Agent is a federal officer."

**B. Definition of "official duties"**

The Government anticipates requesting that the Court define "official duties" as outlined in *United States v. Ornelas*, 906 F.3d 1138 (9th Cir. 2018): "To determine whether Walter Sketch was engaged in his official duties, the government must prove that Walter Sketch was acting within the scope of his employment, that is, that Walter

Government's Trial Brief – 5

Sketch's actions fell within his agency's overall mission, in contrast to engaging in a personal frolic of his own."

### C. Knowledge of status as federal officer

Barring a prima facie showing of self-defense, *see* ECF No. 70 at 11–12, the Government does not have to prove that the Defendant knew that Walter Sketch was a federal officer. *See United States v. Feola*, 420 U.S. 671 (1975). Assuming the Defendant does not present a prima facie claim of self-defense, the Government anticipates requesting the following instruction: "The government is not required to prove that the defendant knew that Walter Sketch was a federal officer."

### D. Bodily Injury

The Government has to prove that bodily injury was inflicted, not that the Defendant intended to inflict bodily injury. *See United States v. Garcia-Camacho*, 122 F.3d 1265, 1269 (9th Cir. 1997). While bodily injury is not defined in § 111, 18 U.S.C. § 113 (housed within the same chapter as § 111) references 18 U.S.C. § 1365(h) for the definition of "serious bodily injury." *See* 18 U.S.C. § 113(b)(2). As § 1365(h) also contains a definition for "bodily injury," the Government anticipates requesting the following instruction regarding the definition of "bodily injury": "Bodily injury means a cut, abrasion, bruise, disfigurement, physical pain, or any other injury to the body, no matter how temporary."

## IV. STIPULATIONS AND AGREEMENTS

The Government and the Defendant have stipulated to the admissibility of

Government's Trial Brief – 6

Government Exhibits 1 & 2. *See* ECF No. 72.

## V. EVIDENTIARY ISSUES

### A. Defendant's Statements

A defendant's statement is admissible if offered against him, but a defendant may not present his own prior statements. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). The Government intends to introduce the Defendant's out-of-court statements both on April 29, 2025 and December 19, 2018.

### B. The Government's Video Exhibits

The Government intends to offer four video exhibits – Exhibits 1 through 4. As noted above, the parties have stipulated to the admissibility of Exhibits 1 and 2. Exhibit 1 contains the full video recorded from a Ring camera installed on the Defendant's front door. Exhibit 2 contains the first eighteen seconds recorded from a Ring camera installed on the Defendant's back door.[2]

Exhibit 3 contains two seconds of a video captured by the Defendant's roommate (D.Y.) on D.Y.'s cell phone. The video take place after the arrest and after the Defendant has been placed in a Border Patrol vehicle. The short clip is relevant as

---

[2] The Government anticipates only offering the first eighteen seconds as (1) the first eighteen seconds depicts the parts of the Defendant's apprehension that take place in view of the back door camera and (2) offering a partial recording omits a conversation between an agent and the Defendant's roommate (D.Y.) concerning whether the Defendant is or is not a "good" guy.

Government's Trial Brief – 7

Agent Sketch's vehicle can be seen with its emergency lights activated.[3] The remainder of the video is irrelevant: the Defendant has already been detained and the video captures (as with the remainder of Exhibit 2) prejudicial dialogue between D.Y. and agents concerning the Defendant.

Exhibit 4 contains a video depicting Agent Sketch's vehicle with the emergency lights activated. The camera pans around the vehicle depicting how the emergency lights appear from different angles.

Dated: October 27, 2025.

S. Peter Serrano
United States Attorney

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

---

[3] Evidence concerning the activation of Agent Sketch's vehicle's emergency lights is relevant as earlier media coverage reported that the vehicle's emergency lights did not appear to be activated in the front door Ring camera footage. The Government intends to offer both Exhibits 3 and 4 to rebut any such inference at trial.

Government's Trial Brief – 8

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Carter L. Powers Beggs; J. Stephen Roberts, Jr.

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney

Government's Trial Brief – 9